# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Vertex Tower Assets, LLC<br><br>    Plaintiff<br><br>v.<br><br><br>Town of Canton<br><br><br>    Defendant | CASE NO. 23-10476 |

## COMPLAINT

1.      This action arises out the Town of Canton Zoning Board of Appeals' (the "Zoning Board") unlawful denial of the application by Vertex Tower Assets, LLC ("Vertex" or "Plaintiff") for a Variance (and a Special Permit, if necessary and Site Plan Review) (the "Variance Application") to permit the construction and operation of a multi-user lattice style wireless communication facility (the "Facility") to be located at 25 Nasar Ahmad Road, Canton, MA 02021 (the "Premises").  The denial is contained in a Decision attached as Exhibit "A." (the "Decision").

2.      The Zoning Board's denial is in direct violation of Section 704 of the Telecommunications Act of 1996 ("TCA"), codified at 47 U.S.C. §332(c)(7) *et seq.*, for the following reasons:

    a.  the Decision is not supported by substantial evidence in a written record;

    b.  the Zoning Board's denial of the Variance Application is based the environmental effects of radio frequency emissions;

c.   There is a significant gap in wireless coverage, there is no viable alternative, and the denial materially inhibits the provision of wireless services, including the ability to introduce new services or otherwise improve the existing services;

3.   As a result of these violations and unlawful acts, the Plaintiff seeks an injunction from this Honorable Court annulling the Decision, and/or directing the Town to approve the Variance Application, including issuing a Special Permit if necessary and granting Site Plan Approval, and issue all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

**PARTIES**

4.   Plaintiff Vertex Tower Assets, LLC is a Massachusetts limited liability company with an office at 2 Commercial St, Sharon, MA 02067.  Vertex is engaged in the business of developing sites for the deployment of "personal wireless services facilities" as that term is defined by federal law, 47 U.S.C. §332(c)(7)(C)(ii) ("Personal Wireless Services Facilities").  Vertex develops these sites for licensed providers of "personal wireless services" as that term is defined by federal statute, 47 U.S.C. §332(c)(7)(C)(i) ("Personal Wireless Services Providers").

5.   Vertex is the tenant under a ground lease with Canton Fish and Game Association, Inc., owners of the Premises, for a wireless communication facility to be located on a portion of the Premises.

6.   The Defendant Town of Canton is a municipality constituted and existing under the laws of the Commonwealth of Massachusetts with a mailing address of 801 Washington Street, Canton, MA.

7.     The Zoning Board is a political subdivision of the Town of Canton and has been delegated the authority by the Town to, among other things, approve applications for variances, special permits and site plan approval under the Town of Canton Zoning Bylaws (the "Bylaws").

## JURISDICTION AND VENUE

8.     The Plaintiff's claims arise under the following sections of United States Code, 47 U.S.C. §332(c)(7), the Telecommunications Act of 1996 or "TCA":

   a.   47 U.S.C. §332(c)(7)(B)(iii), which requires any decision denying a request to place, construct, or modify a personal wireless service facility to be supported by substantial evidence contained in a written record;

   b.   47 U.S.C. §332(c)(7)(B)(i)(II), which states that the regulation of the placement, construction, and modification of personal wireless service facilities by any state or local government or instrumentality thereof shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

9.     47 U.S.C. §332(c)(7)(B)(iv) states that any person adversely affected by any final action or failure to act by a state or local government or any instrumentality thereof pursuant to the aforementioned sections of United States Code may commence an action within 30 days after such final action.

10.    Although the TCA preserves some traditional local zoning authority over the siting of wireless communications facilities, "the methods by which siting decisions are made is now subject to judicial oversight.  Therefore, denials subject to the TCA are reviewed by [a] court more closely" than other types of zoning decisions to which federal courts generally accord greater deference.[1]

---

[1] *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 493 (2d Cir. 1999).

11.     This court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, which grants district courts original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States.

12.     Venue is proper pursuant to 28 U.S.C. § 1392(b)(1) in that the defendants reside in this district, and pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred here.

## STATEMENT OF FACTS

### I. Personal Wireless Services Facilities

13.     The Plaintiff builds, owns and operates Personal Wireless Service Facilities, on and at which it leases space to Personal Wireless Service Providers, including Verizon Wireless.

14.     Section 151 of the TCA establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

15.     To help meet these policy goals, the Plaintiff builds and operates wireless and broadcast towers, and related equipment, known under federal statute as Personal Wireless Service Facilities, so that Personal Wireless Service Providers can provide service to local businesses, public safety entities, and the general public. To advance the national policies enumerated under 47 U.S.C. § 151, the Plaintiff collaborates with Personal Wireless Service Providers to ensure there is a network of "cell sites," each of which consists of antennas and related equipment designed to send and receive radio signals.

16.     To determine the appropriate location of cell sites, engineers use complex computer programs to complete propagation studies. These propagation studies are based, in part, on the boundaries of the existing and planned coverage, the topography of the surrounding land, the presence or absence of structures, and other factors. To provide reliable service to users, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. For a wireless network to perform, cell sites must be located, constructed, and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, or if the cell sites around an area lack sufficient capacity to handle the amount of customer demand for limited wireless spectrum, there will not be reliable service for customers within that area, and customers who live or travel in the area will experience an unacceptable level of dropped calls and call connection failures.

17.     The Plaintiff identified the Premises as an appropriate and available location for the installation of a wireless telecommunications facility to fill the substantial and significant gap in wireless service. A number of factors determine an appropriate and available location for the installation of a wireless telecommunications facility to fill the substantial and significant gap in wireless service, including but not limited to topography, physical obstructions, foliage, antenna height, operating frequency and line of sight, as well as landowner willingness to enter into a lease agreement.

18.     The coverage gap results in nonexistent, unreliable, or degraded wireless service for customers of Verizon Wireless and other Personal Wireless Service Providers.

19.     After an exhaustive review of the coverage needs in this area of Canton all existing facilities, other tall structures and other raw land possibilities, the Plaintiff determined that the

Facility at the Premises is the only feasible location to close the significant gap in wireless coverage.

20.      Upon identifying the site as the only feasible location to close the gap, the Plaintiff entered into an Option and Lease Agreement with the owner of the Premises granting the Plaintiff the exclusive right to locate, construct and operate a wireless communication facility on a portion of the owner's property.

21.       On August 11, 2022, the Plaintiff entered into a Tower Use Agreement with Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless").

## II. Federal Statutory Control Over Siting of Personal Wireless Service Facilities

22.      Section 332(c)(7) of the TCA, 47 U.S.C. § 332(c), governs federal, state, and local government regulation of the siting of "personal wireless service facilities" such as the Facility proposed by the Plaintiff.  It provides, in relevant part, that:

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof –

(I) shall not unreasonably discriminate among providers of functionally equivalent services and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a state or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B).

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

23.     The TCA further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with § 332(c)(7) may seek review in the federal courts, and the court "shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

## III.  Description of Proposed Personal Wireless Service Facility

24.     The Plaintiff is proposing to erect a 120' foot tall monopole style telecommunications tower within a 65' x 72' square foot fenced compound on the Premises to close a significant gap in wireless coverage for Verizon Wireless and other Personal Wireless Service Providers.

25.     The Property is a large, 12 acre substantially undeveloped parcel in the Single Residence – B  Zoning District, abutting undevelopable wetlands and a substantial power line easement.

26.     The existing tree cover on the Premises minimizes the visibility of the tower and minimizes any visual impact on nearby homes or the broader community.

27.     Section 7.5.3 of the Town's Zoning Bylaw indicates that a "Telecommunications Tower shall be a permitted use of land in the Industrial and Limited Industrial zoning districts".

28.     Section 7.5.3 of the Town's Zoning Bylaw further provides that "No person shall build, erect, or construct a Tower upon any parcel of land within a zoning district designated Industrial or Limited Industrial unless a special permit shall have been issued by the Zoning Board of Appeals."

## IV. Application for Relief from the Town of Canton Zoning Board of Appeals

29.     On October 13, 2022, the Plaintiff filed an application with the Zoning Board requesting a Variance from Section 7.5.3 of the Town's Zoning Bylaw to permit construction of the Facility (the "Variance Application").

30.     As part of the Variance Application, the Plaintiff also requested a Special Permit from the Zoning Board for the Facility if necessary.

31.     As part of the Variance Application, the Plaintiff also requested Site Plan Approval from the Zoning Board for the Facility.

32.     Accompanying the Variance Application, the Plaintiff filed with the Zoning Board:

   a.   Application for Variance and Special Permit and Application for Site Plan Review

   b.   Filing Fees

   c.   Abutters List

   d.   Letter of Authorization

   e.   Project Narrative

   f.   Affidavit of Site Acquisition Specialist

   g.   Report of RF Engineer and RF Coverage Maps

   h.   Report of RF Engineer:  Feasibility of Alternative Technologies

   i.   Removal Cost Estimate and draft Removal Bond

    j.  Site Plans

33.    During the public hearing process, the Plaintiff also filed with the Zoning Board the following supplemental materials:

    k.  Response to (Planning Board) Engineering Review

    l.  (Planning Board) Stormwater Pollution Prevention Plan and Operation and Maintenance Plan

    m.  Photographic Simulation Package

    n.  Revised Site Plans

    o.  Letter of Chief Robery, Fire Chief, Town of Canton, to Planning Board.

    p.  1949 Deed, 1983 Subdivision Approval and 1992 Easement

    q.  Report of Donald L. Haes, Jr., Certified Health Physicist, regarding compliance with the FCC's Maximum Permissible Exposure Standards

    r.  Powerpoint Presentation

**V. The Public Hearings and Decision**

34.    On December 1, 2022, January 12, 2023 and January 26, 2023, the Zoning Board held public hearings on the Variance Application after providing notice as required by General Laws ch. 40A.

35.    On November 16, 2022, December 7, 2022 and January 4, 2023, the Town of Canton Planning Board ("Planning Board") also held public meetings in order to review and discuss the Variance Application and the Site Plans and make a recommendation to the Zoning Board with respect to Variance Application and the Site Plans.

36.    As part of its review, the Planning Board retained a consulting engineer at the Plaintiff's expense.

37.    The Planning Board's consulting engineer raised several questions with respect to the Variance Application and the Site Plans, to which the Plaintiff responded.

38.    On November 16, 2022, the Planning Board's consulting engineer indicated to the Planning Board that all of the issues raised in their engineering review have been resolved and a favorable report to the Zoning Board can be considered.

39.    On November 22, 2022, the Planning Board conducted a site visit to the Premises, during which the Plaintiff floated a balloon at and to the height of the proposed Facility.

40.    On December 4, 2022, the Plaintiff provided to the Planning Board and Zoning Board extensive photographic evidence of the lack of or minimal visibility of the proposed Facility from many different vantage points.

41.    On January 4, 2023, the Planning Board voted to make a positive recommendation to the Zoning Board to approve construction of the Facility.

42.    As part of the Variance Application and at the Zoning Board public hearings, the Plaintiff introduced evidence, including radio frequency coverage maps and testimony, demonstrating that there is a significant gap in wireless personal communications services in Canton for Verizon Wireless that could be addressed through the proposed Facility, and that there were no feasible alternatives to the proposed Facility.

43.    As part of the Variance Application and at the Zoning Board public hearings, the Plaintiff provided and displayed photographs and photo simulations to demonstrate the lack of or minimal visibility of the proposed Facility from many different vantage points.

44.    As part of the Variance Application and at the Zoning Board public hearings, the Plaintiff also provided substantial written and oral testimony demonstrating that literal enforcement of the bylaw would involve a substantial hardship to the Plaintiff.

45.     As part of the Variance Application and at the Zoning Board public hearings, the Plaintiff also provided substantial written and oral testimony that granting the requested variances could be granted without any detriment to the public good and would not derogate from the intent of the bylaw.

46.     At each of the Zoning Board public hearings, each member of the Zoning Board was present and was permitted to ask questions of the Plaintiff.

47.     At the Zoning Board public hearings, "Attorney Suzanne Matthews, representing the abutters along with several abutters voiced their concerns regarding the public health of the abutters living on Nasir Ahmad Road."  Decision, page 2.

48.     Members of the public also submitted extensive written testimony to the Zoning Board on the alleged health effects of the proposed Facility.

49.     On January 26, 2023, the Zoning Board did "not vote unanimous to approve a variance…."  Decision, page 3. The Decision was filed with the Town Clerk on February 10, 2023

50.     In the Decision to "not approve" the Variance Application, the Zoning Board made only the following findings:

"The proposed cell tower **meets all Zoning By-Law requirements**, if it was not proposed in a Single Residence District."  Decision, page 2 (emphasis added)

"An independent engineer's review **was not requested** by the [Zoning] Board."  Decision, page 2 (emphasis added).

**Count 1:**
**Violation of 47 U.S.C. §332(c)(7)(B)(iii)**
**Failure to Support the Denial with Substantial Evidence in the Written Record**

51.     The allegations set forth in paragraphs 1 through 50 are restated and incorporated by reference herein.

52.     47 U.S.C. §332(c)(7)(B)(iii) requires that any denial of a personal wireless service facility be "supported by substantial evidence contained in a written record."

53.     It is the Defendants' burden to produce substantial evidence supporting its denial of the Plaintiff's application.

54.     Substantial evidence requires that municipalities base their decisions on standards delineated in state and local zoning laws and not on unwritten, vague or purely subjective standards.[2]

55.     The Plaintiff's Variance Application meets all of the criteria set forth under the Town of Canton Zoning Bylaw Article for telecommunication facilities other than those provisions for which variances were requested.

56.     The denial is based on purely subjective and vague standards, and ignores all of the evidence submitted by the Plaintiff with the Variance Application and discussed with the Zoning Board at the public hearings.

57.     The Plaintiff produced Site Plans prepared by licensed professional engineers meeting all of the requirements for Site Plan Approval.

58.     The Plaintiff clearly demonstrated with scientific evidence and sound methodology from qualified radio frequency engineers that there is a significant gap in wireless coverage by Verizon Wireless in this area of Canton.

59.     The Plaintiff clearly demonstrated with reports and maps from qualified site acquisition specialists that there is no feasible alternative to the proposed Facility.

60.     The Plaintiff clearly demonstrated that denial of the Variance Application would materially inhibit the provision of wireless services by Verizon Wireless and other Personal

---

[2] *ATC Realty, LLC. V Town of Kingston, N.H.*, 303 F.3d 91, 94 (1st Cir. 2002).

Wireless Service Providers, including the ability to introduce new services or otherwise improve existing services.

61.     The Zoning Board failed to put forth any reasonable basis for the denial and reached its decision based upon unscientific and anecdotal evidence as opposed to the scientific evidence and testimony offered by the Plaintiff.

62.     For all of the foregoing reasons and evidence contained herein, contrary to the TCA, the Zoning Board unequivocally fails to base its decision on substantial evidence in the written record in violation of 47 U.S.C. §332(c)(7)(B)(iii).

63.     Consequently, the Zoning Board's denial of the Variance Application is in violation of, and preempted by, Section 332(c)(7)(B)(iii) of the TCA, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order directing the Town to approve the Variance Application, including issuing a Special Permit if necessary and granting Site Plan Approval, and grant all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

**Count 2**
**Violation of 47 U.S.C. § 332(c)(7)(B)(iv)**
**Prohibition of Decision Based on Environmental Effects of Radio Frequency Emissions**

64.     Plaintiff incorporates by reference and realleges the foregoing factual allegations in paragraphs 1 through 63 as if fully set forth herein.

65.     The TCA prohibits municipalities from regulating the placement, construction and modification of Personal Wireless Service Facilities on the basis of the environmental effects of radio frequency ("RF") emissions to the extent that such facilities are shown to comply with the FCC's RF emissions regulations.

66.     As part of its Application, Vertex provided a maximum permissible exposure analysis prepared by certified health physicist to demonstrate that the proposed Facility, even assuming all equipment operating at maximum power, will comply with all applicable FCC RF emissions regulations.

67.     No party contested Vertex's evidence of compliance with the FCC RF emissions regulations.

68.     As set forth in the Decision, the Zoning Board noted the abutter's concerns of the alleged health effects of the proposed Project.

69.     The Decision itself, as well as the supporting administrative record, makes clear that the Board's reference to health was an unmistakable, unequivocal reference to the environmental effects of RF emissions.

70.     The impermissible health-related aspect of the Decision is inextricably bound with the denial set forth in the Decision, making it impossible to validate the Board's grounds for the denial without violating the TCA's prohibition on local RF emissions regulation.

71.     Consequently, the Zoning Board's denial of the Variance Application is in violation of, and preempted by, Section 332(c)(7)(B)(iv) of the TCA, and should be set aside and enjoined by the Court on that basis.  Further, this Court should exercise its power to issue an order directing the Town to approve the Variance Application, including issuing a Special Permit if necessary and granting Site Plan Approval, and grant all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

**Count 3**
**Violation of 47 U.S.C. §332(c)(7)(B)(i)(II)**
**Prohibition of Wireless Services**

72.     The Plaintiff hereby adopts and incorporates by reference as if fully stated herein the allegations contained in paragraphs 1 through 71.

73.     Article VI, Clause 2 of the United States Constitution, commonly known as the Supremacy Clause, provides, in relevant part, that "[t]his Constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

74.     The TCA governs the regulation of the placement, construction, and modification of personal wireless service facilities, and under the Supremacy Clause, preempts other laws, regulations, ordinances, or by-laws affecting such facilities to the extent that such laws, regulations, ordinances, and by-laws conflict with federal law.

71.     The Application constitutes a request to construct a "personal wireless service facility" within the meaning of the TCA, and, as such, is entitled to the protection of Section 332(c)(7)(B).

72.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(i)(II), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government of instrumentality thereof . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

73.     There is a significant gap in personal wireless service in the area surrounding the Premises.

74.    There is no existing structure or property in or near the search area in the vicinity of the Premises that is both reasonably available and technologically feasible to remedy the significant gap in personal wireless service in the area.

75.    The Premises is the only feasible alternative to remedy the significant gap in personal wireless service.

76.    The Zoning Board's denial of the Application effectively prohibits the Plaintiff, in collaboration with Verizon Wireless and other Personal Wireless Service Providers, from providing personal wireless service in the significant gap area.

77.    The Zoning Board's denial of the Variance Application also materially inhibits the provision of wireless services, including the ability to introduce new services or otherwise improve existing services.

78.    Consequently, the Zoning Board's denial of the Variance Application is in violation of, and preempted by, Section 332(c)(7)(B)(i)(II) of the TCA, and should be set aside and enjoined by the Court on that basis. Further, this Court should exercise its power to issue an order directing the Town to approve the Variance Application, including issuing a Special Permit if necessary and granting Site Plan Approval, and grant all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

WHEREFORE, the Plaintiff respectfully requests that this honorable court review this matter on an expedited basis pursuant to 47 U.S.C. §332I(7)(B)(iv), make the following rulings, and grant the following requests for relief:

A.    A declaration and judgment that the Zoning Board's actions violated Section 332(c)(7)(B)(iii) of the Act and are therefore void and invalid;

B. A declaration and judgment that the Zoning Board's actions violated Section 332(c)(7)(B)(iv) of the Act and are therefore void and invalid;

C. A declaration and judgment that the Zoning Board's actions are preempted by Section 332(c)(7)(B)(i)(II) of the Act and is therefore void and invalid;

C. Declare that the Zoning Board's Decision was based on legally untenable grounds and is unreasonable, whimsical, arbitrary and capricious in violation of M.G.L. Chapter 40A and must be annulled;

E. A declaration of the respective rights and obligations of the parties;

F. An order mandating that the Town grant approval of the Variance Application and/or directing the Town to approve the Variance Application, including issuing a Special Permit if necessary and granting Site Plan Approval, and issue all other permits and approvals necessary to construct, maintain, and operate the Facility at the Premises.

G. An award of Plaintiff's costs of suit; and

H. Such other and further relief as the Court deems just and proper.

                              Respectfully Submitted,

                              Vertex Tower Assets, LLC

                              By its attorneys,

                              Parisi Law Associates, P.C.
                              By: /s/ Francis D. Parisi, Esq.
                              Francis D. Parisi, Esq. (#548951)
                              225 Dyer Street
                              Providence, RI 02903
                              Telephone: (401) 447-8500
                              Email   fparisi@plapc.com
                              Dated: February 28, 2023

/s/ Philip B. Posner
Philip B. Posner (BBO #546103)
223 Laws Brook Road #206
Concord, MA 01742
617 413 3209
Land.Law@Verizon.Net
Dated: February 28, 2023

EXHIBIT "A"



# Town of Canton, Massachusetts

ZONING BOARD OF APPEALS
MEMORIAL HALL
801 WASHINGTON STREET
CANTON, MA 02021
TEL: (781) 575-6589   FAX: (781) 575-6574

**COMMONWEALTH OF MASSACHUSETTS**

NORFOLK, SS                                        **TOWN OF CANTON**
**ZONING BOARD OF APPEALS**

**PETITION OF**

**VERTEX TOWERS ASSETS, LLC AND CANTON FISH AND GAME ASSOCIATES, INC.**

**FOR**

**SPECIAL PERMIT AND USE VARIANCE**

**40-22-SP-V**

I.      PETITION

On Petition of Vertex Tower Assets, LLC/Canton Fish and Game Association, Inc for a Variance and Special Permit, if necessary under the applicable provisions of the Canton Zoning By-Laws, so that Vertex Tower Assets, LLC/Canton Fish and Game Association to construct a 120' monopole cell tower in Single Residence District, located at 25 Nasir Ahmad Rd, Canton, Massachusetts (Map/Lot 011_002).

II.     PUBLIC HEARING

A Public Hearing was held on this matter Thursday, December 1, 2022 at 6:00 p.m. in the Salah Meeting Room, Second Floor, Memorial Hall, 801 Washington Street, Canton, Massachusetts, pursuant to notice duly published in the Canton Citizen, which was also posted in Town Hall on or before November 17, 2022, and mailed to all "parties of interest" as indicated by an Assessor's Certified List of Abutters.

The applicant was represented by Attorney Francis Parisi. Subsequent to its opening, further hearing dates were January 12, 2023 and January 26, 2023. Requests for extension of time for filing decisions were received from the attorney for the Applicant, Attorney Parisi on January 13, 2023.

Members of the Zoning Board of Appeals hearing the petition were Messrs. Gregory L. Pando, John R. McCourt and Michael Khoury.

Appearing on behalf of the petitioner was Attorney Francis Parisi, Mr. Steve Kelleher and Mr. Martin Levin.

III.     REPRESENTATIONS AT PUBLIC HEARING

On December 1, 2022, the Hearing was opened, and the Applicant presented an overview of his proposal to construct a 120' monopole cell tower and a 60'x70' equipment building in a Single Resident District. Attorney Parisi claims there is not adequate cell phone coverage at the convergence of three towns; Canton, Sharon and Stoughton. Attorney Parisi primary claims regional 911 and county response including mutual aid coverage will be enhanced by the proposed tower. There is a need for better public safety radio coverage. Attorney Parisi claims the proposal satisfies the FCC requirements.

The Planning Board and their consulting engineer Mr. Thomas Houston have issued a positive recommendation for the project.

Attorney Suzanne Matthews, representing the abutters along with several abutters voiced their concerns regarding the public health of the abutters living on Nasir Ahmad Road. Attorney Matthews provided a memorandum from New York Attorney Robert Berg. Attorney Matthews requested an independent engineer's review of the project.

IV.     FINDINS OF THE BOARD

The Board made the following findings of fact:

The proposed cell tower meets all Zoning By-Law requirements, if it was not proposed in a Single Resident District.

An independent engineer's review was not requested by the Board.

V.      DECISION

After due deliberation, the Zoning Board of Appeals, do not vote unanimous to approve a variance to construct a 120' monopole cell tower and associated equipment building at 25 Nasir Ahmad Road, Canton, MA.

The vote was as follows:

Mr. Pando: AYE; Mr. McCourt: NAY; Mr. Khoury: NAY

The motion to approve failed.

The Board directs this decision be filed with the Town Clerk's office, Canton, Massachusetts.

At the expiration of the twenty (20) day appeal period, a copy of this Decision shall be recorded by the Petitioner at the Norfolk County Registry of Deeds.

Dated this 10th day of February 2020.

Gregory L. Pando

Michael Khoury

John R. McCourt

cc:    Town Clerk
       Board of Selectmen
       Building Commissioner
       Planning Board
       Petitioner/File

A TRUE COPY
ATTEST: